UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LLOYD TATE,                              )   1:14CV2582
                                         )
              Petitioner                 )
                                         )   JUDGE JAMES S. GWIN
        v.                               )   (Mag. Judge Kenneth S. McHargh)
                                         )
JASON BUNTING, Warden,                   )
                                         )
              Respondent                 )   REPORT AND
                                         )   <u>RECOMMENDATION</u>
                                         )


McHARGH, MAG. JUDGE

        This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to

Local Rule 72.2(b)(2).  Before the Court is the petition of Lloyd Tate ("Tate" or

"Petitioner") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The

petitioner is in the custody of the Ohio Department of Rehabilitation and Correction

pursuant to journal entry of sentence in the case of *State of Ohio v. Tate*, Case No.

2012-CR-0666 D (Richland County Dec. 28, 2012).  (Doc. 11-1, Ex. 4.)

        Tate has filed a pro se petition for a writ of habeas corpus, arising out of his

2012 convictions for attempted murder and felonious assault in the Richland

County (Ohio) Court of Common Pleas.  In his petition, Tate raises the following

seven grounds for relief:

1

1.    Lloyd Tate was entitled to a fair and reliable determination of guilt or innocence as well as sentence by an impartial jury under Article I, Sections 2, 9, 10, and 16 and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  The [j]ury selection process here denied Mr. Tate such a fair and impartial jury.

2.    Trial counsel was ineffective for failing to raise the issue and failed to object to [p]rosecutorial [m]isconduct in violation of the Sixth and Fourteenth Amendment [r]ights to a [f]air [t]rial and [d]ue [p]rocess [r]ight.

3.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel failed to call defense witnesses and evidence that would have provided critical facts and exculpatory information under Article I, Sections 2, 10, and 16 and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

4.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel failed to raise the affirmative defense of the Castle Doctrine under Article I, Sections 2, 10, and 16 and the fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

5.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel committed unprofessional errors and was ineffective in the jury selection and failing to object to prosecutorial misconduct pursuant to the sixth amendment to the United States Constitution.

6.    Mr. Tate is factually and actually innocent of the repeat violent offender specification as charged in the indictment.  The sentences imposed by the trial court for the repeat violent offender specifications were contrary to law and the trial court abused its discretion in imposing them in violation of Article I, Sections 2, 10, and 16 of the Ohio Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

7.    The trial court erred as a matter of law when it determined that Lloyed Tate purposely engaged in conduct intending to cause the death of Louis Mason in violation of the Sixth, and Fourteenth Amendments to the United States Constitution.

(Doc. 1 at 7.)

2

The respondent, Warden Jason Bunting ("Respondent"), has filed a motion to dismiss.  (Doc. 11.)  Tate has filed an answer/traverse, to which Respondent has responded.  (Docs. 14, 21.)  For the following reasons, the magistrate judge recommends that Respondent's motion to dismiss be GRANTED.

## I. INTRODUCTION

The Ohio Court of Appeals, in reviewing Tate's convictions on direct appeal, provided the following factual account of Tate's crimes:

{¶ 3} On September 7, 2012, at approximately 11:15 p.m., 911 dispatch received a call about a hit and run. The caller told dispatch, "Yeah, I ain't never seen nothing like that before. The guy was trying to walk away, and he just ran him over, twice." (T. at 62–65). The incident occurred in a field located between Lexington Avenue and Main Street in Mansfield, Ohio, near the Culligan Company at 350 S. Main Street. This field was separated from Antibus Place, an alley that runs between Lexington Avenue and Main Street, by a row of railroad ties stacked two high.

{¶ 4} Curtis Nixon, Darryl Elkins and Lisa Carter all witnessed the incident.

{¶ 5} Curtis Nixon and Darryl Elkins were at Elkins' home at 46 Greenwood Avenue watching television and drinking coffee when they heard arguing in the alley and looked out the window. (T. at 43–44, 142–144). They saw a light-colored Chevy pickup truck in the alley. (T. at 45, 146). They observed one person in the truck and one person standing outside of the driver's door. (T. at 46, 47, 144, 146–147). Mr. Nixon and Mr. Elkins were unable to hear what the argument was about, and neither saw any physical contact between the driver and the person standing outside the vehicle. (T. at 44, 46, 61, 77, 146–147, 152–153, 159). They recalled that they witnessed the verbal argument for less than a minute before the man outside the vehicle started walking away. (T. at 46–47, 147–148, 152). They stated that when the man walked in front of the truck, the truck suddenly leapt forward, striking the man head-on. The vehicle then veered left to jump over the railroad ties, entering the field. (T. at 48–49, 56, 90, 148). The victim was dragged under the truck. (T. at 49, 148,154). The truck spun

3

around in the field, doing what the witnesses described as two "doughnuts" before exiting the field, smashing through a second set of railroad ties. (T. at 49, 59, 148, 153). Mr. Nixon called 911 as he ran outside to assist the victim. (T. at 49, 62–66). Mr. Elkins also came outside. (T. at 148). Mr. Nixon described the victim's legs as being "tied" and twisted. (T. at 50–51). The victim told Mr. Nixon and Mr. Elkins that the driver of the vehicle was Lloyd Tate, the Appellant. (T. at 62–66, 149). This information was given to the 911 dispatcher. They stated that the victim was so afraid that he kept saying that he had to get up the hill to get away from Appellant. (T. at 51). Mr. Nixon and Mr. Elkins encouraged the victim to remain still until help arrived. Mr. Elkins and Mr. Nixon did not know either the victim or Appellant. (T. at 51, 66, 149, 159).

{¶ 6} At trial, both Nixon and Elkins testified that they did not believe that what they saw was an accident. Mr. Nixon stated "You don't run somebody ... If you got mad at somebody and ran them over ... You don't run somebody over for no reason. That's not an accident. And do two doughnuts over them? That's not an accident." (T. at 68). Mr. Elkins testified "Who does that on an accident? Do two doughnuts over somebody then leave." (T. at 155).

{¶ 7} Lisa Carter, who lives at 56 Greenwood Avenue, testified similarly. (T. at 185–206). Ms. Carter knows the Appellant, who was dating her husband's cousin, Debra Carter, at the time of the incident. (T. at 187, 231). She testified that she had seen Appellant earlier in the day, at around 3:00 p.m., parked in front of her house. (T. at 188). She stated that Debra Carter's daughter, Breanna, was moving to a home off of Antibus Place and Appellant and Debra were helping her move. (T. at 188–190). She further testified that later that evening, she heard arguing in the alley and looked outside. (T. at 191, 233). She stated that she recognized Appellant's voice and his truck. (T. at 188, 202, 227). She recalled that she did not see the truck at first, but that she saw the victim running in front of the truck then saw the truck as it ran down the victim and mounted the railroad ties to enter the field. (T. at 215, 232).

{¶ 8} When police arrived to the scene, they found the victim, Louis Mason Jr., lying in the field in the middle of a double circle of tire marks. (T. at 169–170, 173, 336–337). Mr. Mason was alert and talking and was able to name Appellant as the person who ran him over. (T. at 170). He was taken to the emergency room at Mansfield MedCentral Hospital where he was triaged as a Level One, with the most severe of

4

injuries. (T. at 97). Mr. Mason suffered from fractures of his ribs, mainly to the right side of his chest. (T. at 100). He had a large pulmonary contusion and his lung had been punctured by a broken rib. (T. at 100–101). He also had significant second degree burns on his right arm and on his right chest wall. Dr. Anthony Midkiff testified that these burns were not caused by road rash. (T. at 102–103). Mr. Mason's right knee had detached from the tendons and ligaments. (T. at 104). The left leg had bad fractures and the ankle was found also to have been separated. (T. at 106). Mr. Mason was stabilized at MedCentral and then sent to Grant Medical Center due to the severity of his leg injuries and the possibility that there had been damage to arteries in his legs, (T. at 107).

{¶ 9} Lieutenant Joyce Stortz was on duty when the suspect's vehicle was put out on the wire. (T. at 242). She entered the license plate number into the computer and found that it came back to Appellant. (T. at 242). Lt. Stortz testified that she was familiar with Appellant and knew where he lived. (T. at 242). She went to Appellant's address on Bowman Street and located the vehicle parked across the street from Appellant's home. (T. at 243). After waiting for backup, Lt. Stortz approached Appellant's home and knocked on the door. (T. at 244). Appellant came to the door with his hands in the air. The first thing that Appellant stated upon opening the door was, "I didn't run anyone over." (T. at 245–246, 342).

{¶ 10} Lieutenant Stortz testified that Appellant denied running Mr. Mason over with the vehicle and that he was evasive in answering questions, becoming more agitated the longer the conversation continued. (T. at 247). She also testified that she could detect an odor of alcohol on Appellant, and that he admitted he had been at a bar with Mr. Mason. (T. at 248).

*State v. Tate*, No. 13-CA-5, 2013-Ohio-5150, 2013 WL 6158859, at **1-3 (Ohio Ct.

App. Nov. 21, 2013).  (Doc. 11-1, Ex. 8 at 53-56.)

## II.  PROCEDURAL BACKGROUND

### A.    Indictment and Conviction

On October 9, 2012, the Richland County Grand Jury issued an indictment

charging Tate with one count of attempted murder and two counts of felonious

assault.  (Doc. 11-1, Ex. 1.)  Each count had a repeat violent offender specification and vehicle forfeiture specification.  (*Id.*)  Tate entered a plea of not guilty to all charges and specifications.  (Doc. 11-1, Ex. 2.)

A jury trial commenced on December 20, 2012.  (Doc. 11-1, Ex. 37 at 353.)  On December 21, 2012, the jury found Tate guilty of all charges and specifications.  (Doc. 11-1, Ex. 3.)  On December 27, 2012, the trial court sentenced Tate to eleven years' imprisonment on the attempted murder charge and two years' imprisonment on the repeat violent offender specification.  (Doc. 11-1, Ex. 4.)  It found the felonious assault charges to be allied offenses to the attempted murder charge.  (*Id.*)

## B.    Direct Appeal

On January 25, 2013, Tate, through new counsel, filed a timely notice of appeal with the Fifth District Court of Appeals.  (Doc. 11-1, Ex. 5.)  In his appellate brief, he raised the following assignments of error:

1.    a.    The trial court errored [*sic*] as a matter of law when it determined that Lloyd Tate purposely engaged in conduct intending to cause the death of Louis Mason[.]

    b.    Without purpose or design to cause injury to Mason any results were accidental[.]

2.    It was an error to sentence Tate to an additional two years in excess of statutory maximum sentence of the repeat violent offender specification[.]

(Doc. 11-1, Ex. 6 at 16-17.)

On November 21, 2013, the state appellate court overruled Tate's assignments of error and affirmed the trial court judgment. *Tate*, 2013 WL 6158859, at *7. (Doc. 11-1, Ex. 8.)

On August 29, 2014, Tate filed a pro se notice of appeal and motion for leave to file a delayed appeal in the Ohio Supreme Court. (Doc. 11-1, Exs. 9, 10.) The court summarily denied Tate's motion and dismissed the case. (Doc. 11-1, Ex. 11.)

## C. State Post-Conviction Proceedings

On September 18, 2014, Tate, pro se, filed a "Motion to Correct Sentence Not Authorized by Law" in the trial court. (Doc. 11-1, Ex. 12.) The court treated the motion as a petition for post-conviction relief and denied the motion as untimely and barred under the doctrine of res judicata. (Doc. 11-1, Ex. 18.)

Tate filed a pro se notice of appeal in the state appellate court. (Doc. 11-1, Ex. 19.) In his appellate brief, Tate asserted the following assignment of error:

> The Trial Court abused its discretion and committed plain error when it imposed a sentence for the repeat violent offender specifications that were contrary to law. O.R.C. § 2929.14(B)(2)(b)/(D) [and] § 2929.01(CC)(1)-(2); Ohio Const., Article I, Section 10 and 16 and Fourteenth Amendment to the United States Constitution.

(Doc. 11-1, Ex. 20 at 155.) On September 21, 2015, the court affirmed the judgment of the trial court. *State v. Tate*, No. 15-CA-40, 2015-Ohio-3859, 2015 WL 5560007 (Ohio Ct. App. Sept. 21, 2015). (Doc. 11-1, Ex. 23.)

Tate filed a pro se notice of appeal in the Ohio Supreme Court on October 6, 2015. (Doc. 11-1, Ex. 24.) In his memorandum in support of jurisdiction, Tate asserted the following proposition of law:

7

> The Trial and Appellate Courts abused their discretion and committed plain error when they imposed and failed to correct a sentence on the repeat violent offender specifications that Appellant was factually and actually innocent of, thus were contrary to law and as a result, void. Ohio Constitution, Article I, Section[s] 10 and 16, and the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. 11-1, Ex. 25 at 211.)  The court declined jurisdiction on December 2, 2015.

(Doc. 11-1, Ex. 27.)

## D.    Rule 26(B) Application to Reopen Direct Appeal

On March 23, 2015, Tate filed a pro se application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Doc. 11-1, Ex. 28.)  He claimed his appellate counsel was ineffective for failing to raise the following assignments of error on direct appeal:

1.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel failed to object to selection of the jury panel by lottery violating Tate's right to a fair and reliable determination of guilt or innocence as well as sentence by an impartial jury under Article I, Sections 2, 9, 10, and 16 and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

2.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel failed to call defense witnesses that would have provided critical facts and exculpatory information under Article I, Sections 2,10, and 16 and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel failed to raise the affirmative defense of the Castle Doctrine under Article I, Sections 2,10, and 16 and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

4.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel failed to object to [p]rosecutorial [m]isconduct

in violation of the Sixth and Fourteenth Amendment [r]ight to a [f]air [t]rial and [d]ue [p]rocess [r]ights.

5.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel committed unprofessional errors and was ineffective pursuant to the Sixth Amendment to the United States Constitution.

(*Id.* at 255, 258, 260, 261, 264.)  The state appellate court denied the application as untimely on May 19, 2015.  (Doc. 11-1, Ex. 31 at 302-03.)

Tate filed a pro se notice of appeal in the Ohio Supreme Court.  (Doc. 11-1, Ex. 32.)  In his memorandum in support of jurisdiction, he raised as propositions of law the identical claims that he raised in his Rule 26(B) application.  (Doc. 11-1, Ex. 33 at 309-10.)  The court declined jurisdiction on August 26, 2015.  (Doc. 11-1, Ex. 35.)

## E.    Federal Habeas Corpus Petition

Tate filed a pro se petition for writ of habeas corpus in this Court on November 24, 2014.  (Doc. 1.)  He raises the following three grounds for relief:

1.    Lloyd Tate was entitled to a fair and reliable determination of guilt or innocence as well as sentence by an impartial jury under Article I, Sections 2, 9, 10, and 16 and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  The [j]ury selection process here denied Mr. Tate such a fair and impartial jury.

2.    Trial counsel was ineffective for failing to raise the issue and failed to object to [p]rosecutorial [m]isconduct in violation of the Sixth and Fourteenth Amendment [r]ights to a [f]air [t]rial and [d]ue [p]rocess [r]ight.

3.    Appellate [c]ounsel was [i]neffective for failing to raise the issue that trial counsel failed to call defense witnesses and evidence that would have provided critical facts and exculpatory information under Article

I, Sections 2, 10, and 16 and the Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution.

4.   Appellate [c]ounsel was [i]neffective for failing to raise the issue that
trial counsel failed to raise the affirmative defense of the Castle
Doctrine under Article I, Sections 2, 10, and 16 and the fifth, Sixth,
and Fourteenth Amendments to the United States Constitution.

5.   Appellate [c]ounsel was [i]neffective for failing to raise the issue that
trial counsel committed unprofessional errors and was ineffective in
the jury selection and failing to object to prosecutorial misconduct
pursuant to the sixth amendment to the United States Constitution.

6.   Mr. Tate is factually and actually innocent of the repeat violent
offender specification as charged in the indictment.  The sentences
imposed by the trial court for the repeat violent offender specifications
were contrary to law and the trial court abused its discretion in
imposing them in violation of Article I, Sections 2, 10, and 16 of the
Ohio Constitution and the Fifth, Sixth, and Fourteenth Amendments
to the United States Constitution.

7.   The trial court erred as a matter of law when it determined that Lloyd
Tate purposely engaged in conduct intending to cause the death of
Louis Mason in violation of the Sixth, and Fourteenth Amendments to
the United States Constitution.

(*Id.* at 7.)

On December 10, 2014, Tate filed a pro se motion to stay the case and hold it
in abeyance pending exhaustion of his state-court remedies.  (Doc. 3.)  The Court
granted his motion on December 19, 2014.  (Doc. 4.)  On September 28, 2015, Tate
moved to reopen the case, which the Court granted on October 29, 2015.  (Docs. 5,
6.)

Tate filed an amended habeas petition on November 30, 2015.  (Doc. 8.)  The
amended petition does not add new claims; it provides argumentation supporting
the claims asserted in his original petition.

10

On March 22, 2016, Respondent filed a motion to dismiss Tate's petition. (Doc. 11.)  On May 12, 2016, Tate filed a traverse (Doc. 14), motion for appointment of essential experts and investigators (Doc. 15), motion for appointment of counsel (Doc. 16), motion for evidentiary hearing (Doc. 17), motion to proceed in forma pauperis (Doc. 18), and motion for financial assistance (Doc. 19).  Respondent opposed Tate's motion for evidentiary hearing.  (Doc. 20.)  On May 17, 2016, Respondent filed a "Response to  Petitioner's Traverse."  (Doc. 21.)

## III.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

11

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2002).  *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  *Williams*, 529 U.S. at 405.  *See also Price v. Vincent*, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

Tate has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  *McNeil v. United States*, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988).

## IV.  PROCEDURAL DEFAULT

A habeas claim may be procedurally defaulted in two distinct ways.  First, by failing to comply with state procedural rules.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process. *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. *Coleman,* 501 U.S. at 731; *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir.), *cert. denied*, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)). Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no

13

longer entertain the claim.  *Adams v. Bradshaw*, 484 F. Supp. 2d 753, 769 (N.D. Ohio 2007) (citing *Buell*, 274 F.3d at 349).

Respondent moves to dismiss Tate's petition on the ground that each of his claims is procedurally defaulted.  (Doc. 11 at 1.)

## A.    Ground One:  *Jury Selection*

In Tate's first ground for relief, he argues that the trial court denied him a fair and impartial jury by using an improper means of jury selection.  (Doc. 1 at 8-11.)  Respondent argues this claim is procedurally defaulted, because Tate failed to raise it in state court and now is precluded from doing so.  (Doc. 11 at 33.)  The Court agrees.

Tate's jury selection claim arises out of the record of proceedings in the trial court, and he therefore could have raised it on direct appeal.  He failed to do so, however, and, under Ohio law, res judicata now prohibits him from raising the issues in any post-conviction proceeding.  *See State v. Cole*, 2 Ohio St. 3d 112, 113 (Ohio 1982); *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal).  Thus, there are no longer any state-court remedies still available to Tate with respect to this claim, and the Court may deem it procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas

14

petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Tate argues that this claim's procedural default should be excused.  He first asserts the "fundamental miscarriage of justice" exception to the cause and prejudice requirement for overcoming procedural default of federal habeas claims. He contends a miscarriage of justice will result from enforcing the procedural bar, because the trial court denied him a fair and impartial jury through its selection process.  (Doc. 14 at 4, 6.)  The Supreme Court has held, however, that this "narrow exception" applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004).  To demonstrate "actual innocence," a petitioner must show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)).  The claim requires a showing of "new reliable evidence" and factual innocence, not mere legal insufficiency. *See Schulp v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Clearly, Tate's complaints regarding the trial court's jury selection process do not show he is "actually innocent" of the crimes for which he was convicted.

Tate further asserts that under Ohio's Criminal Procedure Rule 52(B), governing plain error, his jury selection claim "cannot be procedurally defaulted or

barred by res judicata." (Doc. 14 at 7.)  But Tate offers no valid legal authority for this argument, and it also lacks merit.

Tate's first ground for relief is procedurally defaulted.

**B.** **Ground Two:** *Ineffective Assistance of Trial Counsel*

In his second ground for relief, Tate claims his trial counsel was ineffective for failing to object to various statements the prosecutor made during trial. (Doc. 1 at 12-14.)  Respondent argues that this claim, too, is procedurally defaulted because it was never presented to state courts. (Doc. 11 at 33.)  As with ground one, Tate did not raise this record-based claim on direct appeal in state court. And because he may no longer do so, the claim is procedurally defaulted. *See, e.g., Adams*, 484 F. Supp. 2d at 769.

Tate responds that, in an application to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B), he raised a claim of ineffective assistance of *appellate counsel* for failing to raise this particular ineffective assistance of *trial counsel* claim. (Doc. 14 at 7 (citing Doc. 11-1, Ex. 28 at 261).)  Rule 26(B) provides that "a defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." Ohio App. R. 26(B)(1).  Dismissal of a Rule 26(B) application on timeliness grounds, however, is an adequate and independent state procedural bar preventing habeas review. *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("Because the timeliness requirements of Rule 26(B) were firmly established and regularly followed by September 1998, they are an adequate and independent state

16

procedural bar.") (citing *Parker v. Bagley*, 543 F.3d 859, 861–62 (6th Cir. 2008);

*Fautenberry v. Mitchell*, 515 F.3d 614, 640–41 (6th Cir.2008)).  Although the state

appellate court denied Tate's Rule 26(B) application as untimely, and the Ohio

Supreme Court declined jurisdiction over his appeal of that ruling (Doc. 11-1, Exs.

31, 35), Tate argues there is sufficient cause to excuse the procedural default.  (Doc.

14 at 7-8.)

Tate's argument fails.  The Sixth Circuit has held that raising an ineffective-

assistance claim in a Rule 26(B) application based on appellate counsel's failure to

raise an underlying claim does not preserve the underlying claim for federal habeas

review, because "the two claims are analytically distinct."  *White v. Mitchell*, 431

F.3d 517, 526 (6th Cir. 2005).  Thus, Tate's Rule 26(B) application did not raise his

trial counsel ineffective-assistance claim.  And, again, because Tate did not raise

this record-based claim on direct appeal in state court and is now precluded from

doing so, it is procedurally defaulted.

Moreover, to the extent Tate argues that he can demonstrate cause for the

untimely filing of his Rule 26(B) application, and therefore the appellate counsel

ineffective assistance constitutes cause to excuse the default of his trial counsel

ineffective-assistance claim, that argument also fails.  As will be demonstrated

below, Tate cannot establish cause for the default of his appellate counsel

ineffective-assistance claims raised in his Rule 26(B) application.  He therefore

cannot use that claim to show cause for the default of this trial counsel ineffective-

assistance claim.

Accordingly, Tate's second ground for relief also is procedurally defaulted.

**C.    Grounds Three through Five:** *Ineffective Assistance of Appellate Counsel*

Tate's third through fifth grounds for relief assert claims of ineffective assistance of appellate counsel.  (Doc. 1 at 15-20.)  Respondent correctly argues that these claims also are procedurally defaulted, because Tate raised them in his untimely Rule 26(B) application.  (Doc. 11 at 20.)

As noted above, Tate presents several "causes" to excuse the untimeliness of his Rule 26(B) application and the procedural default of the claims asserted in it. "Cause for procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted).  "Attorney error that constitutes ineffective assistance of counsel is cause." *Coleman v. Thompson*, 501 U.S. 722, 754 (1991).  However, where there is no constitutional right to counsel, a petitioner cannot claim constitutionally ineffective assistance of counsel. *Coleman*, 501 U.S. at 752.  Generally, "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Id.* (internal citations omitted).

Tate first argues that his appellate counsel's failure to inform him of the need to file a Rule 26(B) application and its filing deadlines constitutes sufficient cause. (Doc. 14 at 7.)  Tate cites *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014), as support. (*Id.*)  In that case, an Ohio habeas petitioner's appellate counsel failed to advise him of the time limit for filing a post-conviction petition, the only remedy for his

ineffective-assistance claim that relied on evidence outside the trial-court record. *Id.* at 515-16.  The court held that, under the circumstances, counsel "had an obligation to apprise him of the" filing requirements, because the petitioner's ineffective-assistance claim had arguable merit and could only be raised in a collateral proceeding, as it was dependent on extra-record facts.  *Id.* at 516.  Thus, it concluded, appellate counsel's deficient conduct served as cause for the procedural default.  *Id.*  *Gunner* did not involve a Rule 26(B) application, however, and the Sixth Circuit has expressly declined to extend it to that context.  *McClain v. Kelly*, 631 Fed. Appx. 422, 433-37 (6th Cir. 2015).  *Gunner*, therefore, does not apply here.

Indeed, as the circuit court noted in *Gunner*, it repeatedly has held that because a Rule 26(B) proceeding is a separate collateral proceeding from the original appeal, to which petitioners have no constitutional right to assistance of counsel, appellate counsel's conduct in connection with a Rule 26(B) application cannot establish cause to overcome a procedural default.  *See, e.g., Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (appellate counsel's failure to appeal denial of Rule 26(B) application to Ohio Supreme Court not sufficient cause); *Scuba v. Brigano*, 527 F.3d 479, 489 (6th Cir. 2007) (appellate counsel's failure to file a timely Rule 26(B) application on petitioner's behalf not sufficient cause).  In fact, it has specifically applied this rule where appellate counsel failed to notify a petitioner of the Rule 26(B) deadline.  *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010) (finding appellate counsel's failure to advise petitioner about Rule 26(B) and its deadline did not constitute cause for procedural default).  Accordingly, Tate's

19

appellate counsel's alleged failure to advise him about the option of filing a Rule 26(B) application or the rule's deadline for filing such an application does not constitute cause to excuse the procedural default of his appellate counsel ineffective-assistance claims.

Tate next argues that his "difficulties" in researching and preparing pleadings and lack of control over his or the institution's schedule constitute cause for the procedural default of his appellate counsel ineffective-assistance claims. (Doc. 14 at 7.)  As noted above, it is well-established, however, that in order to establish cause, a habeas petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Thus, a petitioner's pro se status before a state court, ignorance of the law, and lack of time in the prison law library all have been found insufficient to establish cause to excuse procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (per curium).  Here, too, the circumstances of Tate's confinement do not excuse his failure to file a timely Rule 26(B) application and the default of the claims raised in it.

Finally, Tate asserts the appellate court's failure to provide him notice of its decision is sufficient cause to overcome the procedural default of his appellate counsel ineffective-assistance claims.  Ohio's rules of appellate procedure, however, provides that an appellate courts' service of a judgment "on a party represented by counsel shall be made on counsel."  Ohio App. R. 30(A).  Thus, the state appellate court had no obligation to notify Tate personally of its judgment, and any alleged

20

failure of the court to do so cannot constitute cause for procedural default.

Moreover, the state appellate court found that its clerk of court sent a copy of the

decision to Tate as well as his attorney.  (Doc. 11-1, Ex. 31 at 303.)

Because Tate has not established "cause," the Court need not consider the

"prejudice" prong of the procedural default analysis.  *See, e.g., Simpson v. Jones*,

238 F.3d 399, 409 (6th Cir. 2000).  Tate also does not argue that he is actually

innocent to excuse his procedural default.

Accordingly, Tate has procedurally defaulted his third through fifth grounds

for relief.

**D.     Ground Six:**  *Repeat Violent Offender Specification Conviction*

Tate argues in his sixth ground for relief that he is "actually innocent" of the

repeat violent offender specification.  (Doc. 1 at 21-22.)  Respondent contends that

this claim also is procedurally defaulted, because Tate raised it on direct appeal to

the state appellate court but failed to timely appeal the court's denial of it to the

Ohio Supreme Court.  (Doc. 11 at 26-30.)

As Respondent observes, Tate raised this claim on direct appeal to the state

appellate court.  (Doc. 11-1, Ex. 6 at 16-17.)  The court denied Tate's appeal.  *Tate*,

2013 WL 6158859, at **5-7.  Tate did not appeal that decision to Ohio's high court

within the prescribed time period, *see* Ohio S. Ct. Prac. R. 7.01(A)(1)(a), but instead

filed a notice of appeal and motion for leave to file a delayed appeal with the Ohio

Supreme Court nine months later.  (Doc. 11-1, Exs. 9, 10.)  The court summarily

denied his motion.  (Doc. 11-1, Ex. 11.)

21

But Tate raised the claim again, this time before the trial court in a pro se filing entitled "Motion to Correct a Sentence Not Authorized by Law." (Doc. 11-1, Ex. 12.) The court treated the motion as a petition for post-conviction relief and denied the motion as untimely and barred under the doctrine of res judicata. (Doc. 11-1, Ex. 18.) The trial court's judgment was affirmed by the state appellate court. *Tate*, 2015 WL 5560007. The Ohio Supreme Court declined jurisdiction. (Doc. 11-1, Ex. 27.)

In determining whether a claim is procedurally defaulted, federal habeas courts look to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). If the last state court rendering a reasoned opinion on a federal claim "clearly and expressly states that its judgment rests on a state procedural bar," then the claim is procedurally defaulted and barred from consideration on federal habeas review. *Harris v. Reed*, 489 U.S. 255, 263 (1989). Here, the state appellate court clearly stated its findings that Tate's motion was untimely and barred by res judicata. This claim is procedurally defaulted.

Tate argues that he "properly exhausted" this claim in state courts through his post-conviction motion. (Doc. 14 at 9.) He appears to argue that the state courts misapplied the procedural bars to this claim, because "[p]lain errors and constitutional violations cannot be dismissed because of procedural defaults or the principles of res judicata." (*Id.* at 14.) The Court has examined the Ohio case law that Tate cites and finds it does not apply here. Nor has Tate provided any federal

22

authority to support this argument.  Tate also does not argue cause or prejudice to excuse the default.

Tate does, however, strenuously argue that he is actually innocent of the repeat violent offender specification.  (*Id.* at 9-13.)  But this claim, in addition to being procedurally defaulted, is not cognizable in habeas.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241).  *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (citation omitted)).  Specifically, challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus.  *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003).  In his petition and traverse, aside from a cursory reference to the United States Constitution, Tate cites only to Ohio statutory and case law supporting this claim.  The state appellate court likewise cited only Ohio law in its review of this claim.  *See Tate*, 2013 WL 6158859, at **5-6.  This Court cannot disturb that judgment.

Accordingly, Tate's sixth ground for relief is both procedurally defaulted and not cognizable in habeas corpus.

**E.     Ground Seven:** *Sufficiency of the Evidence*

In his seventh ground for relief, Tate claims that the trial court erred "when it determined that [he] purposely engaged in conduct intending to cause the death of Louis Mason . . . ." (*Id.* at 23-25.) Respondent argues that this claim is also procedurally defaulted because Tate raised it on direct appeal to the state appellate court but failed to timely appeal the court's denial of the claims to the Ohio Supreme Court. (Doc. 11 at 26-30.)

Tate raised this claim on direct appeal to the state appellate court. (Doc. 11-1, Ex. 6 at 16-17.) The court denied it. *Tate*, 2013 WL 6158859, at **3-5. As noted above, Tate did not file a timely appeal of that decision to the Ohio Supreme Court, but filed a notice of appeal and motion for leave to file a delayed appeal with the Ohio Supreme Court nine months later, which were summarily denied. (Doc. 11-1, Exs. 9, 10, 11.)

The Sixth Circuit has held that where a petitioner fails to file a timely notice of appeal with the Ohio Supreme Court and that court denies his motion for leave to file a delayed appeal, a habeas court can assume that the motion was denied because the petitioner failed to demonstrate adequate reasons for his failure to file a timely notice of appeal or to otherwise comply with the court's requirements for delayed appeals. *Bonilla*, 370 F.3d at 497. An unexplained judgment of the Ohio Supreme Court denying a motion for delayed appeal, therefore, is an "adequate and independent" state procedural ruling upon which to bar federal habeas review. *Id.* As the Ohio Supreme Court summarily denied Tate's motion for leave for leave to

24

file a delayed appeal, this claim is procedurally defaulted and habeas review of the claim is barred.

Tate appears to argue that the procedural default should be excused, because his appellate counsel failed to advise him to file a Rule 26(B) or post-conviction petition or the deadlines for filing such petitions.  (Doc. 14 at 7.)  But the Court fails to comprehend the relevance of that issue to this claim's procedural default.

Tate's seventh ground for relief, therefore, is procedurally defaulted.

## V.  RECOMMENDATION

Respondent's motion to dismiss Tate's petition for writ of habeas corpus (Doc. 11) should be granted, and Tate's motion for appointment of experts and investigators (Doc. 15), motion for appointment of counsel (Doc. 16), motion for evidentiary hearing (Doc. 17), motion to proceed in forma pauperis (Doc. 18), and motion for financial assistance (Doc. 19) should be denied.


Dated:  __May 31, 2016__          __/s/ Kenneth S. McHargh__
                                  Kenneth S. McHargh
                                  United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's

order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).